**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | C.A. No.: 2:07-CV-3609-PMD ) ) |
| KEVIN G. KALMAN d/b/a KALMAN CONSTRUCTION CORP., KALMAN CONSTRUCTION CORPORATION a/k/a KALMAN CONSTRUCTION CORP. a/k/a KALMAN CONTRUCTION CORP. & HISTORIC TRADITIONS, MICHAEL J. KIMNER, AUDREY L. KIMNER, and GREAT AMERICAN INSURANCE COMPANY, | ) **ORDER** ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court upon Plaintiff's Builders Mutual Insurance Company ("Builders Mutual") motion for summary judgment or, in the alternative, partial summary judgment. Based on the following, the court grants Plaintiff's motion for summary judgment.

**BACKGROUND**

On January 7, 2005, Kalman Construction ("Kalman") and Michael and Audrey Kimner ("the Kimners") entered into an A107 AIA Construction Contract ("Construction Contract") that required Kalman to build a single family residence for the Kimners to be located at 639 Island Park Drive, Daniel Island, Charleston, South Carolina ("the Kimner Residence"). The construction price was $2,402,500.00 and Kalman was required to supply all of the labor, materials, equipment, and services. The Construction Contract established a completion date of November 5, 2005 and an occupancy date of December 12, 2005. Following the execution of

the Construction Contract, Kalman obtained a building permit from the City of Charleston and commenced construction on the Kimner Residence. Construction proceeded on the Kimner Residence, and on January 18, 2006, Kalman obtained a Certificate of Occupancy from the City of Charleston and transferred the Kimner Residence to the Kimners.

Shortly after the Kimners first occupied the residence, they observed several construction defects and faulty/poor workmanship throughout the home. Consequently, the Kimners complained to Kalman about the various construction defects and faulty/poor workmanship. When Kalman failed to remedy the construction defects and faulty workmanship, the Kimners filed an action against Kalman on January 26, 2007 in the Charleston County Court of Common Pleas ("Underlying Action"). Specifically, the Kimners asserted claims against Kalman for negligence, breach of contract, breach of express warranty, breach of implied warranty of workmanlike service, and violation of the South Carolina Unfair Trade Practices Act.

According to the Underlying Complaint, the Kimners allege the construction defects arising from Kalman's faulty workmanship include, but are not limited to the following:

(a) Violations of CABO Code, Sections R-503.1 and R-503-6 requiring that all exterior walls be covered with approved materials designed and installed to provide a barrier against the weather, and that the weather resistant covering be installed in a manner to restrict the entrance of moisture and weather;
(b) Improper and faulty framing of the Residence and improvements;
(c) Improper and faulty installation of exterior doors, exterior trim, porches and decks;
(d) Improper flashing around the chimney/roof intersection, thereby causing substantial leaking and related wood rot and staining;
(e) Improper installation of windows, thereby allowing heavy water intrusion and related damages throughout the Residence;
(f) Lack of sealant joints presently and at the time of installation of the windows, thereby permitting heavy water intrusion and damage;
(g) No evidence of brick support between CMU piers;
(h) Improper clearance between grade and rim girders of the Residence;
(i) Improper and faulty installation of the roof and roofing components, including the roof shingles and trim returns;
(j) Improper or missing insulation;

  (k) Improper and faulty installation of Residence's plumbing;
  (l) Improper construction and installation of the Residence's foundation and footings; and
  (m) Improper installation of landscaping around the Perimeter of the Residence.

Kalman held a commercial general liability ("CGL") policy issued by Builders Mutual with a one-year policy effective period spanning from March 4, 2005 to March 4, 2006. The CGL policy insured Kalman for certain liability risks subject to various policy exclusions.

On November 2, 2007, Builders Mutual brought this Declaratory Judgment action against Kalman, the Kimners, and Great American Insurance Company. In its answer, Kalman denied the material allegations asserted in the Complaint, asserted a declaratory judgment counterclaim, and alleged an insufficient amount in controversy. The Kimners also timely responded and denied the material allegations of the Complaint. On September 24, 2009, Builders Mutual moved for summary judgment or, in the alternative, partial summary judgment. On October 8, 2009, the Kimners filed their memorandum in opposition to Builders Mutual's motion for summary judgment. Kalman has not filed a response to Builders Mutual's motion for summary judgment.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### I. The Policy

The Policy in this case was issued by Builders Mutual to Kalman on March 4, 2005 and was in effect from March 4, 2005 until March 4, 2006. In section I – Coverages of the CGL Policy, the insuring agreement defines under what circumstances it will grant coverage for an event: "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." In addition, the "insurance applies to . . . 'property damage' only if the . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the CGL Policy does not define the term "accident," South Carolina courts have found that in the absence of a prescribed definition in the policy, the definition of "accident" is "an unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Auto Owners Ins. Co.*

*v. Newman,* 684 S.E.2d 541 (S.C. 2009). The policy defines "property damage" as "physical injury to tangible property. . . ."

The Policy also contains multiple exclusions from coverage including an exclusion for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" The Policy goes on to provide that "this exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." However, by endorsement entitled "EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF," the Policy removes the subcontractor's exception to the "your work" exclusion described above. The Policy defines "your work" as "work or operation performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations." In addition, the Policy contains an endorsement excluding coverage for fungus, mold, and mildew.

In order to determine whether Builders Mutual owes a duty to defend and indemnify Kalman in the Underlying Action, the court must first determine whether there is coverage for "property damage" caused by an "occurrence," and then must determine whether the coverage is subject to any exclusions contained within the Policy.

## II. **Property Damage Caused by an Occurrence**

As stated above, the Policy provides coverage for "property damage" caused by an "occurrence." The Kimners have alleged in their Underlying Complaint that as a result of Kalman's faulty workmanship and defective construction the Residence has been damaged and will require a substantial amount of money to repair and that the value of the Residence has been substantially diminished and depreciated. In addition, the Kimners allege that the defective

construction of the flashing, windows, and sealant joints has led to heavy water intrusion and related wood rot, staining, and an unhealthy microbial growth.

In its memorandum in support of its motion for summary judgment, Builders Mutual argues that the Kimners' claim for faulty workmanship and resulting property damage was not caused by an "occurrence" under South Carolina law as interpreted by *L-J, Inc. v. Bituminous Fire & Marine Insurance Co.*¸621 S.E.2d 33 (2005). The Kimners in their memorandum in opposition to summary judgment argue that because the Underlying Complaint alleges not merely faulty workmanship but also faulty workmanship that resulted in significant water damage to the Residence, the property damage was caused by an "occurrence" under South Carolina law as interpreted by *L-J* and most recently in *Auto Owners Insurance Co. v. Newman,* 684 S.E.2d 541 (S.C. 2009).

In *L-J, Inc. v. Bituminous Fire and Marine Insurance Co.*, the South Carolina Supreme Court, interpreting a CGL policy with coverage language identical to that used in the Builders Mutual's policy at issue, held that property damage to the defective work product itself is merely a claim for faulty workmanship and does not constitute an "occurrence." 621 S.E.2d 33, 36 (2005). However, the *L-J* Court held open the possibility of coverage where faulty workmanship causes third party bodily injury or damage to other property besides the defective work product. *Id.*

Recently, the South Carolina Supreme Court again addressed the issue of whether certain alleged property damage constituted an "occurrence" under a CGL policy. *Auto Owners Ins. Co.,* 684 S.E.2d 541. In *Auto Owners*, a subcontractor had negligently installed stucco on a home, and as result, moisture seeped into the home causing substantial water damage to the home's exterior sheathing and wood framing. Interpreting coverage language identical to that

6

before this court, the Supreme Court found that, although the subcontractor's negligent application of stucco did not on its own constitute an occurrence, the continuous moisture intrusion resulting from the subcontractor's negligence is an occurrence defined by the CGL policy at issue. *Id.* at 544-45. Essentially, since there was property damage beyond that of the defective work product itself, the Court found that the homeowner's claim was not merely for faulty workmanship typically excluded under a CGL policy. *Id.* at 544.

In this case, the court finds that the construction defects of the Residence are not, in themselves, sufficient to constitute an "occurrence." However, the Kimners also claim that the defective construction resulted in substantial water intrusion resulting in wood rot, staining, and an unhealthy microbial growth in the Residence, which is property damage beyond that of the defective work product itself. Therefore, the court finds that the Kimners have alleged "property damage" caused by an "occurrence" in the Underlying Action that would provide coverage under the CGL policy. However, the court finds the "your work" exclusion discussed below precludes coverage in this case.

### III. Policy Exclusions

The Builders Mutual insurance policy contains several exclusions that are frequently referred to as "business risk" exclusions. Specifically, for completed projects, the Policy excludes under *exclusion l* "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" As discussed above, "your work" is defined as "work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations." Additionally, "product completed operations hazard" includes property damage "occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in

7

your physical possession; or (2) Work that has not yet been completed or abandoned." Therefore *exclusion l* is intended to preclude coverage for property damage to the insured's work or work done on the insured's behalf and arising out of the insured's work or work done on the insured's behalf after the work is completed. In the standard policy form, the "your work" exclusion contains an exception for work performed by an insured's subcontractor and states that the "exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." However, in this case the insurance contract contains an endorsement, CG 22 94 10 01, that removes the standard subcontractor exception from the "your work" exclusion.

Builders Mutual argues that with the removal of the subcontractor's exception, the "your work" exclusion precludes coverage for any property damage to Kalman's work or any work performed on behalf of Kalman, and that therefore the "your work" exclusion applies to the property damage claimed by the Kimners in the Underlying Action. The Kimners respond to Builders Mutual's argument by noting that most of the defective construction complained of by the Kimners was performed by Kalman's subcontractors and by stating that the CGL policy language shows that the "your work" exclusion "does *not* apply if the damaged work or the work out of which the damage arises was performed on [Kalman Construction's] behalf by a subcontractor." *Kimners' Opp'n Mem.* at 14. The Kimners seem to be relying on the standard policy language without noting the effect of the endorsement removing the subcontractor's exception to the "your work" exclusion. The Kimners also argue that coverage exists under the CGL policy because they alleged not only property damage to the work product itself but also resulting property damage caused by a water intrustion.

Although the Kimners are correct insofar as their allegation that Kalman and its subcontractors' faulty workmanship caused further property damage does bring their claim for property damage under the initial grant of coverage, the court finds that the "your work" exclusion and the endorsement removing the subcontractor's exception from the "your work" exclusion preclude coverage for the underlying claims of property damage in this case. In *Auto Owners,* discussed above, the South Carolina Supreme Court interpreted coverage language identical to the language of the policy at issue in this case; however, in that case, the policy contained a "your work" exclusion that contained an exception to the exclusion if the damaged work or the work out of which the damage arises was performed by a subcontractor. *Auto Owners Ins. Co. v. Newman,* 684 S.E.2d 541, 545 (S.C. 2009). After determining that continuous moisture intrusion resulting from the subcontractor's negligent installation of stucco is an "occurrence" under the CGL policy, the Court noted that "interpreting 'occurrence' as we do in this case gives effect to the subcontractor exception to the 'your work' exclusion in the standard CGL policy." The Court continues with a brief history of CGL policies and the "your work" exclusion:

> A CGL policy in the home construction industry is designed to cover the risks faced by homebuilders when a homeowner asserts a post-construction claim against the builder for damage to the home caused by alleged construction defects. Several construction-specific exclusions in the standard CGL policy exclude from coverage certain types of property damage attributable to risks outside the scope of CGL recovery. The primary exclusion is the "your work" exclusion which provides that the policy will not cover "property damage" to "your work." In 1986, the insurance industry amended the "your work" exclusion to provide that even if the property damage is to the builder's own work, the "your work" exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." In doing so, the insurance industry extended liability coverage for property damage to the contractor's completed work arising out of work performed by the subcontractor.
>
> *Id.* (citations omitted).

The Court noted that "the subcontractor exception to the 'your work' exclusion preserves coverage for property damage that would otherwise be excluded as 'your work.'" *Id.* at 546.

This court is the first court in South Carolina and appears to be the first court nationwide to analyze the CG 22 94 10 01 endorsement and its application to a particular claim. In this case, the Court finds that the property damage claimed by the Kimners clearly falls into the "your work" exclusion. As noted above, the endorsement CG 22 94 10 01 removes the subcontractor's exception from the "your work" exclusion.[1] Without the subcontractor's exception present in *Auto Owners*, the property damage claimed by the Kimners in the Underlying Complaint falls within the "your work" exclusion. The faulty workmanship and defective construction of the Kimner Residence and resulting water damage is "property damage" to work that was performed by Kalman and by subcontractors on Kalman's behalf. Because Kalman was the general contractor, for purposes of the "your work" exclusion, the entire Kimner Residence was either Kalman's work or work performed on Kalman's behalf as defined by the policy, and the Kimners only claim property damage to their Residence. In addition, the heavy water intrusion sustained as a result of faulty workmanship arose after Kalman and its subcontractors had finished their work, meaning the Residence was included in the "products-completed operations hazard" provision. Therefore, while the "property damage" in this case is caused by an "occurrence" and fits within the initial grant of coverage under the analysis of *Auto Owners*, the removal of the subcontractor's exception to the "your work" exclusion bars coverage in this case.

---

[1] *See, e.g., U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 884 (Fla. 2007) (citing CG 22 94 10 01 and noting that the "ISO has begun to issue an endorsement that may be included in a CGL policy, which entirely eliminates the subcontractor exception to the 'your work' exclusion"); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex. 2007) ("More recently, the Insurance Services Office has issued an endorsement that may be included in the CGL to eliminate the subcontractor exception to the 'your work' exclusion").

Lastly, to the extent the Kimners allege that Kalman's faulty workmanship and defective construction resulting in water intrusion caused an "unhealthy microbial growth," the policy also contains an endorsement excluding coverage for "'property damage'. . . arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any 'fungus,' 'mold, mildew, 'mycotoxins' or resulting allergens." However, because the entire claim for property damage is excluded by the "your work" exclusion as discussed above, the court will not analyze the fungus, mold, and mildew exclusion and its application to the facts of this case.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff Builders Mutual Insurance Company's Motion for Summary Judgment is **GRANTED.** The court finds that Kalman's policy does not provide coverage for the Kimners' claims of faulty workmanship and defective construction and resulting water damage to their Residence.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**December 8, 2009**
**Charleston, SC**